IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JULIA JENKINS,**
**ON BEHALF OF LJ,**                                        Case No. 1:16 CV 584

      Plaintiff,

      v.                                        Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                                        MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Julia Jenkins ("Plaintiff" or "LJ's mother") filed a complaint against the Commissioner of Social Security ("Commissioner"), seeking judicial review of the Commissioner's decision to deny supplemental security income benefits ("SSI") for her minor child, LJ. (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 15). For the reasons stated below, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND[1]

Plaintiff filed an application for SSI on behalf of LJ in December 2012, alleging disability as of October 2009. (Tr. 173). The claim was denied initially and on reconsideration. (Tr. 132, 142). An administrative law judge ("ALJ") held a hearing in September 2014, at which Plaintiff and LJ, represented by counsel, testified. (Tr. 51). Following the hearing, the ALJ issued an

---

1. A previous application for social security income was protectively filed on behalf of claimant in October 2009, alleging disability as of October 2009. (Tr. 13). The claim was denied initially and on reconsideration. *Id*. An ALJ held a hearing in June 2011, at which Plaintiff and LJ, not represented by counsel, testified. *Id*. Following the hearing, the ALJ issued an unfavorable decision. *Id*.

unfavorable decision. (Tr. 10-32). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on March 10, 2016. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

LJ was born October 12, 2001, and was an eleven-year-old child on the ALJ hearing date. (Tr. 173). She has no work history.

LJ and Plaintiff testified at the hearing in September 2014. (Tr. 51-87). LJ's mother testified LJ takes a methylphenidate for ADHD, given twice daily. (Tr. 59). Since the medication, LJ's mother testified she had noticed improvement in some of LJ's grades. (Tr. 60). LJ testified the medication "calms" her and helps her focus on her schoolwork better. (Tr. 77). LJ fixed her own eggs the morning of the deposition. (Tr. 78). She testified she has no problems showering, brushing her teeth, brushing her hair, and picking out her own clothes. (Tr. 82).

Educational Records

LJ underwent state testing in May 2011, May 2012, and May 2013, when LJ was in the third, fourth, and fifth grade. (Tr. 233). Her 2011 results reflected "limited" abilities in reading and math. *Id*. In 2012, LJ tested "proficient" in match, and "limited" in reading. *Id*. LJ's 2013 results showed "limited" abilities in reading and math. *Id*.

LJ's fifth grade report card (in 2012-2013) reflected failing grades in reading, writing, science, and social studies, but "superior" achievement in work habits and social skills. (Tr. 207). These skills include working well and interacting well with others and participating and contributing during class. *Id*.

2

In January 2013, LJ's fifth grade teacher, Ms. Tawanna Hamm, completed a Teacher Questionnaire[2]. (Tr. 417-24). She noted LJ had "no problems" functioning in the domains of Interacting and Relating With Others, Moving About and Manipulating Objects, and Caring for Himself or Herself (Tr. 420-22); and "No Problem" to "A very serious problem" functioning in the domains of Acquiring and Using Information and Attending and Completing Tasks (Tr. 418-19). Specifically, Ms. Hamm found LJ had "no problem" carrying out single-step instructions, using language appropriate to the situation and listener, and using adequate vocabulary and grammar to express thoughts or ideas in general, and everyday conversation. (Tr. 420).

An Individualized Education Program ("IEP") meeting was held February 2013, when LJ was in the fifth grade. (Tr. 236-45). The team noted LJ is "a friendly student that listens well to her teachers and gets along with her peers." (Tr. 237). It also noted LJ demonstrates "the ability to process and reason as expected when compared to peers her age" and exhibits "significant strength in processing and reasoning with verbal information." *Id.*

In April 2013, Applewood Centers performed a diagnostic interview with LJ and Plaintiff, and psychological as well as IQ testing. (Tr. 493). Psychologist Elizabeth Franz administered the Wechsler Intelligence Scale for Children-Fourth Edition. Testing results indicated: a full-scale score of 63 (borderline range); verbal comprehension score of 79 (borderline range); perceptual reasoning score of 67 (borderline range); working memory index score of 56 (extremely low); and processing speed index score of 75 (borderline range). (Tr. 279). Dr. Franz diagnosed LJ with mild

---

2. The Teacher Questionnaire permits teachers to rate students in various functions related to each domain on a scale in the following progression: no problem; slight problem; obvious problem; serious problem; and very serious problem. (Tr. 417-24). *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 854, n. 4 (E.D. Mich. 2012).

mental retardation and disruptive behavior disorder. (Tr. 502-03), but noted the results were "widely variable" (Tr. 502).

In October 2013, the Maple Heights City School District prepared an Evaluation Team Report. (Tr. 279-80). On October 25, 2013, School Psychologist Shayla L. Brown administered the Wechsler Abbreviated Scale of Intelligence-Second Edition. (Tr. 279). The results indicated: a full-scale IQ of 69 (borderline range); verbal comprehension score of 70 (borderline range); and a perceptual reasoning score of 74 (borderline range). *Id.*

LJ's October 2013 IEP reflected LJ "gets along with other students in the classroom." (Tr. 339). Does not need specially designed instruction in the area of math. *Id.* It concluded LJ needed to be in a language arts inclusion classroom to monitor her progress. *Id.*

Relevant Medical Evidence[3]

In February 2012, LJ was referred to mental health services at Signature Health for marking walls with feces when angry and eating with her feet, among other behaviors. (Tr. 404). She was referred for a psychiatric evaluation. (Tr. 405).

Sylvester Smarty, M.D. evaluated LJ ten times between March 2012 and October 2013. (Tr. 486-92; 514-15; 542-45). He diagnosed her with anxiety, depression, and disruptive behavioral disorder, (Tr. 542), and screened her for ADHD (Tr. 546). In March 2012, Dr. Smarty documented a Global Assessment of Functioning ("GAF") score[4] of "about 60-65". (Tr. 543).

---

3. Plaintiff does not challenge the ALJ's findings with respect to her alleged physical impairments. Therefore, the discussion of medical evidence is limited to records related to Plaintiff's mental impairments. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in claimant's brief waived).
4. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32–33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score between 51-60 indicates moderate symptoms (e.g., flat effect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with

Over the course of LJ's treatment, Dr. Smarty consistently noted LJ was "awake, alert, oriented to time, place, and person" and that she appeared "well groomed" and "dressed appropriately." (Tr. (Tr. 486-92; 514-15; 542-45). He noted LJ was doing "much better in school" (Tr. 545), that she does "pretty good on [her] medications" (Tr. 514).

In December 2012, LJ's mother applied for supplemental security income on LJ's behalf. (Tr. 179-88). She filled out a Function Report wherein she disclosed LJ does not have a problem communicating or in her ability to progress in learning. (Tr. 182-183). LJ's mother also noted LJ has friends her own age and that she generally gets along with school teachers. (Tr. 185). She also noted LJ's impairment(s) do not affect her ability to help herself and cooperate with others in taking care of personal needs (Tr. 186).

In October 2013, Dr. Smarty completed a "Questionnaire [for] Health Care Professionals on Medical and Functional Equivalence" where he found an extreme limitation in Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating With Others, Caring for Self, and Health and Physical Well-Being; but, a moderate limitation in Moving About and Manipulating Objects. (Tr. 510-13). In June 2014, Dr. Smarty completed the same questionnaire. (Tr. 534-40). He found an extreme limitation in Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating With Others; moderate limitations

---

peers and co-workers); whereas a GAF score 61 and 70 indicates "some mild symptoms" (e.g., depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships. While the GAF scale is no longer used, *Judy v. Colvin*, No. 3:13CV00257, 2014 WL 1599562, at *7 (S.D. Ohio 2014), *report and recommendation adopted*, No. 3:13CV00257, 2014 WL 1900614 (S.D. Ohio 2014), it "may assist an ALJ in assessing a claimant's mental RFC." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835 (6th Cir. 2016).

in Moving About and Manipulating Objects and Caring for Self; and no limitation in Health and Physical Well-Being. *Id*.

Dr. Smarty re-evaluated LJ in December 2013, and in January, May, and June of 2014. (Tr. 555-58). In December, Dr. Smarty diagnosed her with ADHD, oppositional defiant disorder, and mood disorder, and added a methylphenidate to her medication regimen. (Tr. 555). He consistently found LJ was "awake, oriented to time, place, and person", "well groomed", and "dressed appropriately" (Tr. 555-58). Dr. Smarty also noted was "improving most of her grades" (Tr. 556), that her "school performance improved a lot" and "her grades improved significantly" (Tr. 558).

State Agency Physicians

In February 2013, the state issued a Disability Determination Explanation, which included a report and opinion of reviewing psychologist Patricia Semmelman, Ph.D. (Tr. 110-18). Dr. Semmelman found LJ was less than markedly impaired in Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, and Caring for Yourself. (Tr. 114-15). She reported LJ had no limitation in the domains of Health and Physical Well-Being or in Moving About and Manipulating Objects. (Tr. 115).

In March 2013, a second state agency reviewing psychologist – Caroline Lewin, Ph.D. – made the same findings. (Tr. 125).

ALJ's Decision

The ALJ concluded Plaintiff had not engaged in substantial gainful activity since her application date (Tr. 16), and had severe impairments of "attention deficit hyperactivity disorder, mood disorder, and borderline intellectual functioning (20 CFR 416.924(c))" (Tr. 17). He concluded these impairments did not meet or equal the listings and concluded Plaintiff is not disabled. (Tr. 28).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R § 416.905(a); *see also* 42 U.S.C. 1382c(a)(3)(A). In the case of a claimant under the age of 18, the Commissioner follows a three-step evaluation process – found at 20 C.F.R. § 416.924(a) – to determine if a claimant is disabled:

1. Is claimant engaged in a substantial gainful activity? If so, the claimant is not disabled regardless of their medical condition. If not, the analysis proceeds.

2. Does claimant have a medically determinable, severe impairment, or a combination of impairments that is severe? For an individual under the age of 18, an impairment is not severe if it is a slight abnormality or a combination of slight abnormalities which causes no more than minimal functional limitations. If there is no such impairment, the claimant is not disabled. If there is, the analysis proceeds.

3. Does the severe impairment meet, medically equal, or functionally equal the criteria of one of the listed impairments? If so, the claimant is disabled. If not, the claimant is not disabled.

To determine whether an impairment or combination of impairments functionally equals a listed impairment, the minor claimant's functioning is assessed in six different functional domains. 20 C.F.R. § 416.926a(b)(1). If the impairment results in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain of functioning, then the impairment is of listing-level severity and therefore functionally equal to the listings. 20 C.F.R. § 416.926a(a).

A "marked" limitation is one that is more than moderate but less than extreme, and interferes "seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i). "It is the equivalent of functioning [one] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id*. An "extreme" limitation is one that interferes "very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3)(i). The six functionality domains are: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for yourself, and 6) health and physical well-being. *Id.* § 416.926a(b)(1). In determining functional equivalence, the ALJ must consider the "whole child." Social Security Ruling 09–lp, 2009 WL 396031, at *2.

8

D<small>ISCUSSION</small>

Plaintiff raises two objections to the ALJ's decision: (1) the ALJ erred in his assessment of Dr. Smarty's and Dr. Lewin's opinions; and (2) the ALJ erred in finding LJ's impairments did not meet or functionally equal the requirements of Listing 112.05(D). (Doc. 17).

Medical Opinions

### Dr. Smarty

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id*. In contrast, "[a] physician's opinion based on a claimant's subjective allegations, rather than the medical evidence, is not entitled to significant weight." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004). If the ALJ does not afford a treating source opinion "controlling weight," she must give "good reasons" why she refused to do so. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). These reasons serve a second

9

purpose, and that is to provide Plaintiff with an explanation for the ALJ's reasoning for a finding of not disabled. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

"If the ALJ does not accord the opinion of the treating source controlling weight, it must apply certain factors" to assign weight to the opinion. *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* Even so, an ALJ is not required to enter into an "exhaustive factor-by-factor analysis" to satisfy the "good reasons" requirement. *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Dr. Smarty completed a "Health Care Professionals on Medical and Functional Equivalence" questionnaire in October 2013 and then, again, in June 2014. (Tr. 510-513; 534-540). In June 2014, Dr. Smarty found moderate limitations in the domains of Moving About and Manipulating Objects and Health and Physical Well Being, and extreme limitations in the domains of Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating With Others, and Caring For Yourself. (Tr. 21). Between October 2013 and June 2014, Dr. Smarty's findings indicate an extreme limitation to no limitation in the domain of Health and Physical Well Being. (Tr. 512; 538).

Regarding these questionnaires, the ALJ rejected Dr. Smarty's opinion as follows:

Dr. Smarty does not appear to understand the child functional rating system under our regulations. His assessment is not consistent with his treatment notes (Exs. B8F, B11F). Additionally, the undersigned notes that Dr. Smarty's most recent functional assessment is somewhat less restrictive than his earlier assessment dated October 14, 2013, where he assessed extreme limitations in the domains of caring for yourself and in health and physical well-being. In fact, over the course of approximately eight months, the claimant went from an extreme limitation to no

limitation in that category. Dr. Smarty's opinion is not consistent with the evidence as a whole.

(Tr. 21).

Plaintiff argues the ALJ "points to nothing specific or specifically lacking in Dr. Smarty's [sic] for his determination that Dr. Smarty does not understand the functional domains criteria." (Doc. 17, at 21). Further, Plaintiff argues Dr. Smarty's findings are consistent with record evidence. *Id*. The undersigned disagrees. The ALJ explains Dr. Smarty's assessment by noting (1) the assessment is not consistent, or supported by, his treatment notes; (2) his assessments were internally inconsistent; and (3) Dr. Smarty's opinions are not consistent with the evidence as a whole. (Tr. 21).

As stated, Dr. Smarty's extreme limitations are inconsistent with, and not supported by, his treatment notes. First, Dr. Smarty consistently found LJ was "well groomed" and "dressed appropriately" contrary to his moderate limitation in the domain of Caring for Self and extreme limitation in the domain of Health and Physical Well-Being. (Tr. 486; 489-492; 514-515; 543; 545; 555-556).  Second, where Dr. Smarty found LJ had extreme limitations in the domains of Acquiring and Using Information and Attending and Completing Tasks, his treatment notes disclose LJ was "doing much better in school", (Tr. 545), "continues to do fairly good in school," (Tr. 486), was "doing good behavior wise", (Tr. 491), "doing pretty good on [] medications" (Tr. 514), "improving most of her grades", (Tr. 556), her school performance "improved a lot", (Tr. 558), "she is doing much better in school now", (*Id*.), and "[LJ's] grades improved significantly" (*Id*.).

Further, Dr. Smarty's assessments were internally inconsistent. He found that over the course of six months, LJ went from an extreme limitation to no evidence of a limitation in the domain of Health and Physical Well-Being. (Tr. 512; 538). Opinions of a treating physician that

11

are internally inconsistent are not entitled to controlling weight. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (*en banc*) (ALJ reasonably found "that others of Dr. Templin's many medical assessments of [plaintiff] were inconsistent with this assessment, and that Dr. Templin was therefore less than credible").

Moreover, Dr. Smarty's assessments are not consistent with the record as a whole. For example, contrary to Dr. Smarty's finding of an extreme limitation in the domain of Interacting and Relating to Others, LJ's fifth grade report card demonstrated "superior" achievement in working well and interacting well with others. (Tr. 207). Further, LJ's February and October IEPs demonstrated she is a "friendly" student that gets along well with other students. (Tr. 237; 249). Moreover, contrary to Dr. Smarty's finding of an extreme limitation in the domain of Acquiring and Using Information, LJ's fifth grade report card reflects "superior" achievement in the area of "participat[ing] and contribut[ing] during class". (Tr. 207).

For these reasons, the undersigned finds the ALJ's explanation, focusing on consistency and supportability, satisfies the "good reasons" requirement, and is supported by substantial evidence. *See Brock v. Com'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010) (upholding the ALJ's explanation that challenged the supportability and consistency of a treating physician's opinion in an "indirect but clear" way); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (similar findings).

### Dr. Lewin

Plaintiff next argues the ALJ erred giving great weight to the opinion of state agency reviewer Dr. Lewin. "[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp.2d 813, 823-24 (S.D. Ohio 2011). This is because the Commissioner

views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; 20 C.F.R. §§ 416.927(c), (d); SSR 96-6p, 1996 WL 374180, at *2-3; *see also Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by substantial evidence.").

Here, the ALJ assigned great weight to the opinion of state agency consultant Dr. Lewin. (Tr. 20). Specifically, the ALJ stated:

> As for the opinion evidence, the undersigned gives significant weight to the residual functional capacity conclusions reached by medical consultant, Caroline Lewin, Ph.D., dated March 27, 2013 (Ex. B5A, pp. 16, 17) employed by the State Disability Determination Services. She reviewed the evidence available to her and determined the claimant was "not disabled." The undersigned has adopted her functional domains, as she accurately tracked the evidence and nothing significant has been submitted since that assessment. Although Dr. Lewin is a non-examining psychologist, and therefore her opinion does not as a general matter deserve as much weight as those of examining or treating physicians, as mentioned above, the updated evidence did not change her assessment.

> Dr. Lewin's assessment of the claimant's functional domains is as follows:

> 1. Acquiring and Using Information: Less than Marked.
> 2. Attending and Completing Tasks: Less than Marked.
> 3. Interacting and Relating With Others: Less than Marked.
> 4. Moving About and Manipulating Objects: No limitation.
> 5. Caring For Yourself: Less than Marked.
> 6. Health and Physical Well Being: No limitation.

(Tr. 20). Plaintiff argues the ALJ's reliance is misplaced because: (1) Dr. Lewin's opinion was issued two years prior to the hearing decision, and (2) Dr. Lewin assessed LJ "without the benefit of the 2013 IQ testing" and Dr. Smarty's assessments of functioning. (Doc. 17, at 20). The undersigned disagrees.

13

An ALJ can rely on a state agency physician's opinion even if they did not review the entire record, as long as the ALJ himself considered the changes in evidence. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (holding an ALJ did not err in relying on state agency physician opinions that were not based on the entire record because the ALJ "took into account any relevant changes in [Plaintiff's] condition"). Here, the ALJ took into account Plaintiff's 2013 IQ test scores and Dr. Smarty's assessments. (Tr. 19; 21). The Plaintiff offers no evidence as to why Dr. Lewin's assessing Plaintiff two years prior to the hearing decision prejudices Plaintiff.

Further, the ALJ's reliance on Dr. Lewin's assessment is supported by substantial evidence. Dr. Lewin found LJ had a less than marked limitation in the domains of Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, and Caring For Yourself; and no limitation in the domains of Moving About and Manipulating Objects and Health and Physical Well-Being. (Tr. 20). First, Dr. Lewin's finding of less than marked limitation in the domains of Interacting and Relating With Others and Caring for Yourself is corroborated by Ms. Hamm's findings of "no problem" in the same domains. (Tr. 420; 422). Moreover, LJ's fifth grade report card demonstrates "superior" achievement in "complet[ing] work accurately and neatly", an area of the domain Attending and Completing Tasks; and, "[p]articipat[ing] and contribut[ing] during class", an area of the domain Acquiring and Using Information. (Tr. 207).

The undersigned, therefore, upholds the ALJ's conclusion as it is supported by substantial evidence and, while Dr. Lewin may not have considered the 2013 IQ scores and Dr. Smarty's assessments, the ALJ did. *McGrew*, 343 F. App'x at 32.

Listing 112.05(D)

A claimant bears the burden of showing she meets or equals a listed impairment. *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999). If a claimant meets or equals the

14

requirements of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §
404.1520(d). In order to determine whether a claimant's impairment meets or is medically
equivalent to a listing, the ALJ may consider all evidence in a claimant's record. *Id.* §§
404.1520(a)(3), 404.1526(c). In reviewing an ALJ's listing determination, there is no requirement
for "heightened articulation" by the ALJ, as long as the finding is supported by substantial
evidence. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (citing *Dorton v. Heckler,*
789 F.2d 363, 367 (6th Cir. 1986) (an ALJ's step-three determination is not to be overturned unless
it is legally insufficient)).

Listing 112.05(D) [5] states:

Intellectual Disability: Characterized by significant subaverage general intellectual
functioning with deficits in adaptive functioning.

The required level of severity for this disorder is met when the requirements in A,
B, D, E, or F are satisfied.

***

D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or
other mental impairment imposing an additional and significant limitation of
function.

Here, Plaintiff argues the ALJ erred because he did not give an explained conclusion, and
LJ has a valid verbal IQ score of 70, a valid full-scale IQ of 69, and severe impairments of ADHD
and mood disorder. (Doc. 17, at 15). The undersigned disagrees.

Although the ALJ must explain his Step Three decision, Plaintiff bears the burden of
proving she meets a listed impairment. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th

---

5. The Social Security Administration revised the medical criteria for evaluating mental disorders
effective January 17, 2017. 81 FR 66138 (S.S.A.), 81 FR 66138-01, 2016 WL 550752, at *1.
However, because the prior version was in effect at the time the ALJ rendered his opinion, the
court utilizes that version in its review of that determination.

Cir. 1999). Plaintiff must "present medical findings that satisfy each criterion of the particular listing." *Lee v. Comm'r of Soc. Sec*. 529 F. App'x 706, 710 (6th Cir 2013). Thus, as long as substantial evidence supports the ALJ's conclusion that LJ does not have "significantly subaverage general intellectual functioning with deficits in adaptive functioning" in addition to "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function", as required by 112.05(D), the ALJ's determination will be affirmed.

Although the record reveals LJ had mental impairments and some limitation of function, there is also significant evidence that supports the ALJ's determination. In making his finding, the ALJ relied on the opinions of treating and examining physicians. (Tr. 17). LJ's treating physician consistently found LJ was oriented to time, place, and person; well groomed; and dressed appropriately. (Tr. 486; 489-492; 514-515; 543; 545; 555-556). She exhibited improvement in school and behavior. (Tr. 541; 545). The record also reveals LJ experienced an improvement in her grades when she was on her medication. (Tr. 514; 556; 558).

The state agency consultants found LJ had no limitation in two domains, Moving About and Manipulating Objects and Health and Physical Well Being; and, a less than marked limitation in the remaining domains, Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating With Others, and Caring for Yourself. (Tr. 20). The ALJ gave Dr. Lewin's assessment great weight, because it "accurately tracked the evidence." *Id*. For example, Dr. Lewin's finding of a less than marked limitation in the domains of Interacting and Relating With Others and Caring for Yourself is corroborated by Ms. Hamm's findings of "no problem" in the same domains. (Tr. 420; 422). Moreover, LJ's fifth grade report card demonstrates "superior" achievement in "complet[ing] work accurately and neatly", an area of the domain Attending and

Completing Tasks; and, "[p]articipat[ing] and contribut[ing] during class", an area of the domain Acquiring and Using Information. (Tr. 207). The undersigned finds the ALJ's determination supported by substantial evidence in the record.

Alternatively, Plaintiff argues LJ's impairments functionally equal the listing. She argues the evidence supports marked limitations in the domains of Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating With Others, and Caring for Yourself. (Tr. 18-19). Even if substantial evidence supports a finding contrary to the ALJ's, however, this Court still cannot reverse so long as substantial evidence also supports the conclusion reached by the ALJ. *See Jones*, 336 F.3d at 477.

### *Acquiring and Using Information*

This domain focuses on a child's ability to acquire and learn information, and how well the child uses the information she has learned. 20 C.F.R. § 416.926a(g). Regarding adolescent-aged children, 20 C.F.R. § 416.926a(g)(2)(v) states:

> In middle school and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

*Id.*

Plaintiff argues LJ's April 2013 full-scale IQ score of 63, September 2013 full-scale IQ score of 69, and April 2013 GAF score of 70 support a marked limitation in this domain. (Doc. 17, at 18). Plaintiff also noted LJ's October 2013 verbal comprehension score of 70 and perceptual

reasoning score of 74. *Id*. In support of his decision, the ALJ specifically noted LJ is in regular classes, had an improved full-scale IQ score October 2013, and LJ's mother testified LJ is doing better in school and her grades have improved significantly. (Tr. 22).

It is true LJ's April 2013 full-scale IQ score was 63 (Tr. 497); however, this testing is counter-balanced by LJ's improved October 2013 full-scale IQ score of 69, (Tr. 279), and her mother indicating LJ's school performance has improved significantly (Tr. 60; 486; 545; 556; 558). LJ's February 2013 IEP noted LJ "demonstrate[s] relative strength in processing and reasoning information that she is required to present verbally." (Tr. 237). Moreover, while LJ's teacher marked LJ as, overall, having a "serious problem" in this domain, she marked LJ as having less of a problem in the areas of "Comprehending oral instructions", "Understanding school and content vocabulary", and "Expressing ideas in written form". (Tr. 418).

Thus, the ALJ's conclusion of less than marked limitation in Acquiring and Using Information is supported by substantial evidence.

### *Attending and Completing Tasks*

This domain focuses on a child's ability to focus and maintain attention; her ability to begin, carry through, and finish activities at a reasonable pace; and the ease at which she changes activities. 20 C.F.R. § 416.926a(h). For adolescent-aged children, 20 C.F.R. § 416.926a(h)(2)(v) states:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

Plaintiff argues LJ's teacher's and psychiatrist's reports, and the fact she does not do her chores at home, support a marked limitation in this domain. (Doc. 17, at 19). The ALJ specifically noted LJ's mother indicated ongoing improvement; and LJ's teacher reported a slight problem in this domain with a concern for working slowly, making mistakes, and not completing classwork and homework. (Tr. 23). The ALJ further noted an on and off diagnosis of ADHD, but LJ's mother testified LJ's ADHD medication helps keep her focused. *Id*.

While LJ's behavior at school and at home show LJ does not complete classwork and homework or chores; it is also true LJ's mother indicated ongoing improvement and that her ADHD medication helps keep her focused. (Tr. 61). Further, LJ's teacher Ms. Hamm noted LJ can "focus[] long enough to finish assigned activity or task[s]". (Tr. 419). Moreover, Moreover, LJ's fifth grade report card demonstrates "superior" achievement in "[c]omplet[ing] work accurately and neatly", "[c]ompleting class work on time", and "[t]urns in completed homework on time". (Tr. 207).

Considering the above-referenced evidence regarding LJ's ongoing improvement, ability to focus, and carry out a task, the ALJ's conclusion of a less than marked limitation in Acquiring and Using Information is supported by substantial evidence.

### *Interacting and Relating With Others*

This domain focuses on an individual's ability to initiate and sustain emotional connections with others; develop and use the language of her community; cooperate with others; comply with rules; respond to criticism; and respect and take care of the possessions of others. 20 C.F.R. § 416.916a(i). Specifically, 20 C.F.R. § 416.926a(i)(2)(v) speaks to adolescents:

> By the time you reach adolescence, you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside

your family. You should recognize that there are different social rules for you and your friends and your acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

*Id*.

Plaintiff argues LJ's failure to interact with other students, not talk, and her history of fighting with her nieces and nephews support a marked limitation in this domain. (Doc. 17, at 19). In support of his decision, the ALJ noted while LJ's mother testified LJ is quiet, LJ's teacher reported LJ has no problems interacting with others, and hearing testimony revealed LJ is not a behavior problem at school. (Tr. 25).

The fact LJ needs to increase her social interaction with other students is counterbalanced by LJ's teacher's indication she has no problems interacting with others. (Tr. 420). Specifically, LJ's teacher indicates LJ has "no problem" "[m]aking and keeping friends" and "[p]laying cooperatively with other children". *Id*. At the hearing, LJ indicated she does not have "very many friends at school", but she has friends "around her house that [she] play[s] with". (Tr. 81). Moreover, LJ's fifth grade report card demonstrates "superior" achievement in "[w]ork[ing] and interact[ing] well with others" and "[r]especting the rights and property of others." (Tr. 207).

Considering the evidence cited by the ALJ and the above-mentioned reports regarding LJ's ability to interact with others, the ALJ's conclusion of a less than marked limitation in this domain is supported by substantial evidence.

### *Caring For Yourself*

Last, Plaintiff asserts error in the ALJ's finding of a less than marked limitation in the domain of Caring For Yourself. This domain focuses on an individual's ability to maintain a

healthy emotional and physical state, including how well a child satisfies her physical and emotional wants and needs in appropriate ways. 20 C.F.R. § 416.926a(k). Regarding adolescents, 20 C.F.R. § 416.926a(k)(2)(v) states:

> [A]n adolescent without impairment should feel more independent from others and should be increasingly independent in all her day-to-day activities. The child may sometimes experience confusion in the way she feels about herself. The child should begin to notice significant changes in her body's development, and this can result in anxiety or worrying. Sometimes these worries can make the child feel angry or frustrated. The child should begin to discover appropriate ways to express her feelings, both good and bad (e.g., keeping a diary to sort out angry feelings, exercising, or listening to music to calm down). The child should begin to think seriously about her future plans (e.g., work), and what she will do upon completing school. The child should maintain personal hygiene adequately (e.g., bathing, brushing teeth, wearing clean clothing appropriate for weather and context). The child should take medications as prescribed.

*Id.*

Plaintiff argues the facts LJ marks walls with feces and occasionally eats with her feet support a marked limitation in this domain. (Doc. 17, at 19). In support of his decision, the ALJ noted LJ's teacher reported no marked problems in this area other than she does not like to ask for help. (Tr. 27). The ALJ also noted LJ's mother did not voice any other concerns regarding this area except LJ needs "constant reminders and prodding to care for her hygiene." *Id*.

The fact there is evidence of LJ's poor hygiene is counterbalanced by Dr. Smarty's and her teacher's assessments, and LJ's own testimony. Specifically, LJ's teacher found LJ has "no problem" "[t]aking care of personal hygiene" and "[c]aring for physical needs (e.g., dressing, eating)". (Tr. 422). Dr. Smarty assessed LJ as "well groomed" and "dressed appropriately" consistently over the course of his treatment. (Tr. 486, 488-92, 543, 545, 546, 548-56). At the hearing, LJ testified she has "no problems" taking care of herself, as in showering, brushing her teeth, brushing her hair, and picking out her own clothes. (Tr. 82). Further, the day of her deposition, LJ cooked her own eggs for breakfast. (Tr. 78).

Considering the evidence cited by the ALJ, and the above-mentioned reports regarding LJ's ability to care for herself, the ALJ's conclusion of a less than marked limitation in this domain is supported by substantial evidence.

### CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's decision denying benefits is affirmed.

IT IS SO ORDERED.

s/James R. Knepp II
United States Magistrate Judge